## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ELCINDA PERSON and ROBERT HOSSFELD, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>LYFT, INC. and YODEL TECHNOLOGIES, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>) CIVIL ACTION FILE NO.<br>)<br>) 1:19-CV-02914-TWT<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT YODEL TECHNOLOGIES, LLC'S MOTION TO STRIKE CLASS ALLEGATIONS

This Court should deny the request by Yodel Technologies, LLC ("Yodel") to strike class allegations related Yodel's alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. 227 ("TCPA") for calls it made while promoting the services of the co-defendant Lyft, Inc. ("Lyft") to plaintiffs Elcinda Person and Robert Hossfeld (collectively referred to as "Plaintiffs"). Yodel's attempt to disqualify both the Plaintiffs and their counsel should be seen for what it is: a meritless attack in a desperate attempt to short-circuit this putative class action

regarding its extensive robocalling practices, which have drawn the ire of federal courts and government entities alike.[1]

First, Yodel asserts that because counsel for the Plaintiffs did not (a) publicly file the Plaintiffs' phone numbers or (b) share those phone numbers prior to the commencement of discovery, they are inadequate class counsel. To be clear, the Plaintiffs did provide their phone numbers to Lyft prior to the commencement of discovery and without a discovery request, as the parties engaged in a mutual exchange of information. The fact that Yodel and the Plaintiffs did not reach a similar accord does not make counsel for the Plaintiffs inadequate.

Second, the fact that Mr. Person was convicted of a misdemeanor 24 years ago for simple assault that is, unsurprisingly, unrelated in any way to the unauthorized pre-recorded calls at issue does not impact his ability to represent the putative class in this matter. Similarly, Mr. Hossfeld's assault from 15 years ago

---

[1] *See e.g. Braver v. NorthStar Alarm Servs., LLC*, 2019 U.S. Dist. LEXIS 118080 (W.D. Okla. July 16, 2019) (Summary judgment entered on behalf of a class of over 200,000 individuals called by Yodel's pre-recorded messages); Yodel agrees to pay $70,000 for robocalls into Pennsylvania, (https://www.inquirer.com/business/robocalls-pennsylvania-attorney-general-josh-shapiro-20190625.html?outputType=amp, Last Visited November 13, 2019); Yodel Involved in the FTC's "Call it Quits" Operation Against Telemarketing Entities, https://www.ftc.gov/system/files/attachments/press-releases/ftc-law-enforcement-partners-announce-new-crackdown-illegal-robocalls/operation_call_it_quits_actions_list_6-25-19.pdf Last Visited November 13, 2019).

and DWI charge from two decades ago will not impact his integrity in pursuit of the interests of the putative class.

## I. FACTUAL BACKGROUND

Yodel is in the telemarketing business. It purchases consumer data (e.g., names and telephone numbers), from third-party data brokers and then robocalls those telephone numbers on behalf of companies, like defendant Lyft, who want to sell their goods and services over the phone.

Yodel's robocalls generally work as follows: "A computer dial[s] the telephone number, detect[s] whether it was answered by a potential customer and, if so, transfer[s] the connected call to a soundboard agent who [i]s trained to play prerecorded wav files (audio files) to deliver messages to the called party by pressing buttons." *Braver*, 2019 U.S. Dist. LEXIS 118080 at *7. This "soundboard software . . . require[s] Yodel's soundboard agents, located in a call center in India, to follow a script which instruct[s] them to press buttons in a certain order thereby delivering prerecorded audio clips to the called party." *Id.* at *7-8.

This is exactly the type of conduct the TCPA prohibits and Plaintiffs in this case allege that Yodel engaged in the exact same conduct here. *See* Doc. 40 (First Amended Complaint). Plaintiffs allege that Yodel's calls in this case were placed to cellular telephone numbers on behalf of Lyft in violation of 47 U.S.C. §

3

227(b)(1)(A), which prohibits "any call . . . . using any ATDS, or an artificial or prerecorded voice . . . to any telephone number assigned to . . . cellular telephone service[.]" *Id.* at ¶¶ 13, 85.

Yodel's soundboard system unleashes a massive amount of nuisance calls upon the public. For instance, in just seven months Yodel made *78 million* soundboard calls during a single campaign on behalf of a single client. *Braver*, 2019 U.S. Dist. LEXIS 118080 at *32. The Plaintiffs have proposed the following class definition:

> All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) at any time in the period that begins four years before the date of the filing of this Complaint to trial, (d) using an artificial or prerecorded voice, or the same dialing system used to contact the Plaintiffs; and (e) after obtaining that person's telephone number from a third party data seller.

*Id.* at ¶ 72.

**II.    ARGUMENT**

In moving to strike class allegations, Defendants "have the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Romano v. Motorola, Inc.*, 2007 U.S. Dist. LEXIS 86472, * 7 (S.D. Fla. November 26, 2007), quoting *Bryant v. Food Lion*, Inc., 774 F. Supp.

4

1484, 1495 (D.S.C. 1991). This is because defendants are asking the court to "preemptively terminate the class aspects of this litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery for which they would otherwise be entitled on questions relevant to class certification." *Ibid*.

The Eleventh Circuit has explained why this high standard to strike class allegations at the pleading stage exists in *Herrera v. JFK Med. Ctr., Ltd. P'ship*, 648 F. App'x 930, 934 (11th Cir. 2016):

> The Supreme Court has emphasized that class certification is an evidentiary issue, and "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (internal quotation marks omitted). In fact, "the determination usually should be predicated on more information than the complaint itself affords. The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential." *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710, 713 (5th Cir. 1973) (en banc) (internal citation and footnote omitted). After all, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2552, 180 L. Ed. 2d 374 (2011) (internal quotation marks omitted).

648 F. App'x at 934.

Here, Yodel's arguments are not based on "the face of plaintiffs' complaint". Instead, they cite to extraneous materials, most of which is inadmissible in any

case. *See Infra.* Yodel's motion to strike class allegations should be denied for this reason alone.

### I.     Neither Plaintiffs nor Counsel have a conflict with the class.

As the sole basis for claiming that Plaintiffs and counsel have a conflict with the class, Yodel asserts that the Plaintiffs have not provided it with their complete telephone numbers and instead only pled the first six digits of their numbers.[2] However, a plaintiff in a TCPA case is not required to provide or plead her telephone number in order to state a claim and proceed to discovery, including in putative class actions. *See e.g. Owens v. Starion Energy, Inc.*, 2017 U.S. Dist. LEXIS 101640, at *15-16 (D. Conn June 30, 2017); *Ott v. Mortgage Investors Corp. of Ohio*, 65 F. Supp. 3d 1046, 1059 (D. Or. 2014) ("If there is a question about the phone number at issue, it can be addressed through discovery.").

Ironically, Yodel claims that the Plaintiffs' would not provide the complete phone numbers without "free discovery" from Yodel. The Northern District of Georgia local rules addresses when discovery commences where a defendant has filed a motion to dismiss, as is the case here. *See* LR 26.2(A), ND Ga. Even though discovery had not commenced, the Plaintiffs nevertheless indicated their

---

[2] Yodel concedes that privacy concerns prevented the Plaintiffs from identifying their complete telephone number in the pleadings.

willingness to do so if the parties had a mutual exchange of information, as the

Plaintiffs agreed to with Lyft:

> Hey, Eric. Good to connect with you again.
>
> Once you guys get on file with an appearance or can confirm that you've been retained, we'd be happy to send that over as long as you'd agree to share the results of any investigation you engage in using that information.

*See* ECF 53-3 at *5. Yodel refused and instead advised, "[w]e will, of course, share

any appropriate and discoverable documents at the proper time as the case

proceeds." *Id.* The Plaintiffs responded:

> Eric
>
> As you may recall from other cases, we are willing to engage in informal discovery provided it is reciprocal.
>
> So we will provide plaintiff's number provided you share what information you find regarding the number including the call records when you discover it.
>
> Your response below, just states you may provide a response after formal discovery.
>
> That is fine, but if sharing information won't be reciprocal then you will need to wait until we respond to your formal discovery until we provide the number.

*Id.* at *4.  Thus, the notion that Plaintiffs are deliberately withholding their

numbers in the interest of "running up damages" is groundless.

Yodel's assertions that they are unable to investigate the allegations of the Complaint or "implement any necessary remedial action" ring particularly hollow. Plaintiffs describe the calls they received in detail, identify the first six digits of their phone numbers on which they received the calls, identify the dates of the calls, and also the numbers that appeared on their caller id when they answered the calls. ECF No. 40 at ¶¶ 40-43, 51-54.  Moreover, Yodel has clearly been able to identify the Plaintiffs and publicly filed information about them, including an assertion that a charge of a misdemeanor from more than twenty years ago renders them inadequate class representatives.  The idea that Yodel, having all this information, is unable to investigate or remediate its own actions is ludicrous.

Yodel's argument of a "risk of harm" created to absent class members only exists at Yodel's choosing and is not something created by the Plaintiffs or their counsel. If Yodel continues its robocalling tactics, it is doing so in the face of summary judgment entered on behalf of a class of over 200,000 individuals called by Yodel's pre-recorded messages in *Braver*, 2019 U.S. Dist. LEXIS 118080 (Summary judgment entered on behalf of a class of over 200,000 individuals called by Yodel's pre-recorded messages).

## II. The Plaintiffs' criminal record, often decades old, including charges that were dismissed, does not impair their ability to represent the class.

"It is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether…the representative parties will fairly and adequately protect the interests of the class. It is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." *Eggleston v Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).

Yodel claims that Mr. Person is inadequate to serve as a class representative based on a conviction for a misdemeanor assault from 24 years ago. Similarly, it claims Mr. Hossfeld was convicted "for assault causing bodily injury to a family member, criminal trespass, and violation of a protective order" 20 years ago and for "driving while intoxicated" nearly 15 years ago. None of these convictions have anything to do with "a dishonest act or false statement;" they are therefore are inadmissible to attack character for truthfulness pursuant to Fed. R. Evid. 609(a). *See United States v. Gatlin*, 2019 U.S. Dist. LEXIS 110971, *12-13 (S.D. Fla. July 3, 2019 ("unlike felony convictions, misdemeanor convictions are not admissible to impeach defendants under Rule 609, unless the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.")

Further, given that they occurred more than 10 years ago, they could not be admitted in any case given that their probative value does not "substantially outweigh" their prejudicial effect. Fed. R. Evid. 609(b). "Federal Rule of Evidence 609(b) creates a strong presumption against the use for impeachment purposes of stale convictions, such as this one, which was twenty-eight years old at the time of this trial." *United States v. Pope*, 132 F.3d 684, 687 (11th Cir. 1998); *see also United States v. Pritchard*, 973 F.2d 905, 908 (11th Cir. 1992) ("the danger in admitting stale convictions is that while their remoteness limits their probative value, their prejudicial effect remains[.]")

Yodel also claims that during the last 32 years that Mr. Person has also been *charged* with, but not convicted of, felonies.[3] Rule 609 sets forth the rules which apply to attacking a witness's character for truthfulness, one of which is that it may only be done "by evidence of a criminal *conviction*." Fed. R. Evid. 609(a) (emphasis added). "An arrest without a conviction, or the conduct leading to it, cannot be proven by extrinsic evidence." *Sanchez-Velasco v. Sec'y of the Dep't of Corr.*, 287 F.3d 1015, 1032 (11th Cir. 2002); *see also. Jackson v. Crews*, 873 F.2d

---

[3] None of these charges relate to circumstances involving his ability to represent the class in this matter. *See, e.g.*, *United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990) ("[i]t is established in this Circuit, however, that crimes such as theft, robbery, or shoplifting do not involve 'dishonesty or false statement' within the meaning of Rule 609(a)(2)."

1105, 1110 (8th Cir. 1989) ("No where do the rules of evidence allow a witness's credibility to be attacked by evidence of a previous arrest. … Therefore the district court properly refused to permit Crews to impeach the witness with evidence of prior arrests.").

This is with good reason - "one may not extrapolate from convictions to other situations such as arrests[.]" *United States v. Wilson*, 244 F.3d 1208, 2001 U.S. App. LEXIS 5218, *24-25 (10th Cir. 2001). "[T]he potential for prejudice is high and past arrests have little probative value because arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty." *Ibid*.

Further, it would be "clearly erroneous" to permit even cross-examination about these non-conviction charges, given the "conjectural chain" necessary to find it probative and non-prejudicial in this "unrelated proceeding." *Sanchez-Velasco*, 287 F.3d at 1032; *see also Dopson-Troutt v. Novartis Pharms. Corp.*, 2013 U.S. Dist. LEXIS 134904, * 11 (M.D. Fla. September 20, 2013) (rejecting request to cross-examine plaintiff about prior arrest without a conviction); *In re BankAtlantic Bancorp, Inc.*, 2010 U.S. Dist. LEXIS 142374, *4-6 (S.D. Fla. August 18, 2010) (same).

A "credibility analysis is not an examination into the representatives moral righteousness' but instead relates to any improper or questionable conduct <u>arising out of or touching up on the very prosecution of the lawsuit</u>." *Curry v. Kraft Foods Glob., Inc.*, No. 10 C 1288, 2011 U.S. Dist. LEXIS 102510 *13 (N.D. Ill. Sep. 12, 2011) (emphasis added), *citing Gooch v. Life Investors Ins. Co. of Am., 264 F.R.D. 340, 349 (M.D. Tenn. 2009)*. Here, there is no dispute that none of the conduct relates in any way to the unauthorized calls at issue. In fact, they all happened more than a decade (and in some cases thirty years) prior to the telemarketing calls that are the subject of the complaint. The mere fact that a named plaintiff has a prior criminal conviction, even for dishonesty, which is not present here, does not make him inadequate. *See e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*, 2012 U.S. App. LEXIS 26708, *9 (9th Cir. 2012) (affirming finding of adequacy in TCPA class action despite named plaintiff's *multiple* criminal convictions for offenses involving dishonesty and use of aliases).

The cases cited by Yodel do not support their position in this circumstance. First, in *Hively v. Northlake Foods, Inc.,* 191 F.R.D. 661 (M.D. Fla. 2000), the plaintiffs in a putative class action about workplace discrimination were deemed to be inadequate based almost exclusively on the nature of their conduct during their employment with the defendant, including instances of "flipping off" customers,

lying on their employment applications with the defendant, and management opportunities not actually being available when they claimed they were passed over for those positions. *Id.* at 669. In *Hall v. Nat'l Recovery Sys.,* 1996 U.S. Dist. LEXIS 11992 (U.S. M.D. Fla. 1996), the Plaintiff (a) had recently been convicted of fraudulently writing checks in addition to his prior arrests for grand theft and strong armed robbery (b) had lied about those in his depositions (c) had "been in and out of jail as well as unemployed for major periods of his adult life. Hall has a history of relocating and is currently living in a motel" and (d) had three active warrants out for his arrest. *Id.* at *13-14. The Court recognized "any of these allegations individually may not be sufficient to defeat Hall as an adequate representative, this Court finds that with Mr. Hall's multitude of impeachable convictions and prior inconsistent statements, he would lack credibility at trial and, thus, materially prejudice other class members." *Id.* at *14-15.

Finally, the adequacy concerns in *Brider v. Nationwide Credit, Inc.,* No. 97 C 3830, 1998 U.S. Dist. LEXIS 16532 (N.D. Ill. Oct. 13, 1998) related to inaccurate statements given during the plaintiff's deposition. *Id.* at *12 ("Ms. Brider's false statements during the deposition may have relevance to the claims surrounding this lawsuit"). Furthermore, as other courts have pointed to when discussing *Brider*, "the disqualified representative's incredible deposition

testimony had a direct bearing on the case before the court, possibly adversely affecting the case for all plaintiffs…In this case, McCall's testimony about his prior conviction has no bearing on the case and will not jeopardize the claims of the rest of the class." *McCall v. Drive Fin. Servs., L.P.,* 236 F.R.D. 246, 252 (E.D. Pa. 2006). Of course, as discovery has not yet commenced, no such issues are present here.

### III.   CONCLUSION

The Court should therefore deny Yodel's motion.


Dated: November 13, 19

                              By:   */s/ Anthony I. Paronich*
                                      Anthony I. Paronich
                                      Email: anthony@paronichlaw.com
                                      PARONICH LAW, P.C.
                                      350 Lincoln Street, Suite 2400
                                      Hingham, Massachusetts 02043
                                      Telephone: (617) 738-7080
                                      *Admitted Pro Hac Vice*

                                        Steven H. Koval
                                        Georgia Bar No. 428905
                                        3575 Piedmont Road
                                        Building 15, Suite 120
                                        Atlanta, GA  30305
                                        Telephone:  (404) 513-6651
                                        shkoval@aol.com

>Keith J. Keogh
>Timothy J. Sostrin
>Keogh Law, LTD.
>55 West Monroe Street, Suite 3390
>Chicago, Illinois 60603
>Telephone: (312) 726-1092
>keith@keoghlaw.com
>*Admitted Pro Hac Vice*
>
>Andrew Heidarpour
>1300 Pennsylvania Ave., NW 190-318
>Washington, DC 20004
>Telephone: 202-234-2727
>aheidarpour@hlfirm.com
>*Admitted Pro Hac Vice*

## **CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C & 7.1.D**

Pursuant to L.R. 7.1.D, I certify that this document has been prepared with 14-point, Times New Roman font, approved by the Court in L.R. 5.1.C.

>/s/ *Anthony Paronich*
>Anthony Paronich

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system.

*/s/ Anthony I. Paronich*
Anthony I. Paronich